# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARIETTA KAY DOWNEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-475-G |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Marietta Kay Downen brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 401-434. Upon review of the administrative record (Doc. No. 7, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff filed a DIB application on July 1, 2014, alleging a disability-onset date of August 1, 2011. R. 16, 34, 145-48. Following a denial of her application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on February 2, 2016. R. 29-58, 85-89, 91-93. In addition to Plaintiff, a vocational expert

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

("VE") testified at the hearing. R. 52-57. The ALJ issued an unfavorable decision on February 24, 2016. R. 13-24.

The Commissioner of Social Security uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 18. At step two, the ALJ determined that Plaintiff had the severe medically determinable impairments of rheumatoid/inflammatory arthritis, other and unspecified arthropathies, and other disorders of gastrointestinal system. R. 18-19. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all her medically determinable impairments. R. 19-23. The ALJ found that Plaintiff had the residual functional capacity to

> perform the full range of sedentary work as defined in 20 CFR 404.1567(a) except she should avoid concentrated exposure to extreme heat or cold; avoid concentrated exposure to wetness or humidity; avoid concentrated exposure to poorly ventilated areas; avoid concentrated exposure to environmental irritants such as fumes, odors, dusts and gases; and she can occasionally finger with the dominant right hand.

R. 19.

At step four, the ALJ, relying upon the VE's testimony, found that Plaintiff was capable of performing her past relevant work as a receptionist. R. 24, 53-55. Therefore,

2

the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. R. 24.

Plaintiff's request for review by the SSA Appeals Council was denied on February 21, 2017, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-4; 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff argues that the ALJ erred by: (1) assigning "considerable weight" to the opinions of state-agency physicians who did not have specialized knowledge related to Plaintiff's impairments, (2) improperly assessing Plaintiff's credibility, and (3) improperly evaluating Plaintiff's past work at step four of the sequential evaluation. *See* Pl.'s Br. (Doc. No. 13) at 1-10.

   A. *Evaluation of State-Agency Opinions*

In this case, the primary opinion evidence in the record (as opposed to treatment records) comes from two state-agency reviewing consultants, James Williams, MD, and Elva Montoya, MD. Both physicians assessed Plaintiff as retaining the ability to perform light work with no additional limitations. R. 65-66 (Ex. 2A), 76-77 (Ex. 4A). In explaining the rationale behind his July 2014 opinion, Dr. Williams provided a brief review of Plaintiff's activities of daily living and the treatment record from 2009 to July 2014, including Plaintiff's surgical history and the results of physical examinations. R. 65-66. In September 2014, Dr. Montoya affirmed Dr. Williams' opinion and provided an identical rationale for the assessment. R. 76-77.

In evaluating Plaintiff's RFC, the ALJ discussed the state-agency opinions, Plaintiff's foot surgeries, treatment for rheumatoid arthritis, respiratory problems, and obesity. The ALJ also evaluated Plaintiff's hearing testimony and the statements Plaintiff made in her function report. R. 20-23 (citing R. 202-10 (Ex. 6E)). At the conclusion of the RFC determination, the ALJ stated that for the "reasons set forth above" the assessments of the state-agency "examiners and consultants" were due "considerable

weight." R. 23. The ALJ ultimately assessed a more restrictive RFC, limiting Plaintiff to sedentary rather than light work and including several additional environmental and manipulative limitations. R. 19.

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence for several reasons connected to the state-agency opinions. First, Plaintiff contends that the opinions of Dr. Williams and Dr. Montoya cannot properly support the RFC because neither physician personally examined her and that, rather than relying on the opinions of Dr. Williams (an orthopedist) and Dr. Montoya (a pediatrician), the ALJ should have obtained an opinion from a "rheumatologist and/or gastroenterologist" who would have more expertise regarding Plaintiff's impairments. Pl.'s Br. at 2; *see also* Pl.'s Reply (Doc. No. 18) at 1-3. Plaintiff also argues that the ALJ "should have fulfilled his duty to develop the record" by obtaining an opinion from an examining or treating physician. Pl.'s Br. at 3.

Plaintiff's arguments are unavailing. Social Security regulations are clear that the agency's adjudicators will "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Relatedly, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). But the regulations provide that specialization is only one of various factors that agency adjudicators must consider when evaluating a medical opinion. *See* 20 C.F.R. §

5

404.1527(c)(1)-(6). In addition, findings from state-agency consultants must be treated as "expert opinion evidence of nonexamining sources" at the ALJ level of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996);[2] *see also id.* at *2 (prescribing that state-agency factual findings "become opinions" at the ALJ level of review). The fact that a record does not contain a treating or examining opinion as to the claimant's RFC does not automatically trigger an obligation for the ALJ to obtain one. *See* 20 C.F.R. § 404.1519 (instructing that "[t]he decision to purchase a consultative examination will be made on an individual case basis"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").

There was no indication from Plaintiff's counsel at the hearing, or from the ALJ in his written decision, that the lengthy record available in this case was inadequate for the ALJ to address the relevant physical issues. *See Wall*, 561 F.3d at 1062-63; *see also Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and later fault the ALJ for not performing a more exhaustive investigation."). And finally, even if the ALJ had erred in his evaluation of the state-agency-physician opinions, Plaintiff fails to show any prejudice in the ALJ's assignment of "considerable weight" to those opinions, given that the ALJ's RFC assessment is actually more restrictive than that set forth by those physicians. *See Harris v. Astrue*, 496 F. App'x 816, 819 n.1 (10th Cir.

---

[2] Effective March 27, 2017, Social Security Ruling 96-6p has been superseded by Social Security Ruling 17-2p. *See* SSR 17-2p, 2017 WL 3928306, at *1 (Mar. 27, 2017).

2012) ("The burden to show prejudicial error on appeal rests with [the claimant]." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))); *Chrismon v. Colvin*, 531 F. App'x 893, 899 n.6 (10th Cir. 2013) ("Alleged 'errors' that favor the claimant are not grounds for reversal."); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.").

For all these reasons, Plaintiff has not shown that the ALJ's assessment of these medical opinions was improper or resulted in an RFC that is not supported by substantial evidence.

B. *Evaluation of Plaintiff's Credibility*

At the time of the ALJ's decision, the relevant Social Security Ruling[3] required an ALJ to evaluate a claimant's symptoms—e.g., "pain, fatigue, shortness of breath, weakness, or nervousness"—according to a two-step process. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *accord* 20 C.F.R. § 404.1529(b), (c) (2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s)" "that could reasonably be expected to produce the [claimant's] pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2. Second, if such an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects" of the

---

[3] Social Security Ruling 96-7p has since been replaced by Social Security Ruling 16-3p, which eliminates use of the term "credibility" and provides new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *4 (eff. Oct. 25, 2017, to be applied to decisions made on or after Mar. 28, 2016).

claimant's symptoms "to determine the extent to which the symptoms limit the [claimant's] ability to do basic work activities." *Id.* In connection with this second step, "whenever the [claimant's] statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the [claimant's] statements based on a consideration of the entire case record." *Id.* (citing 20 C.F.R. § 404.1529(c)(4)).

The Court "normally defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *accord Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) ("[W]e will not upset such determinations when supported by substantial evidence." (internal quotation marks omitted)). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (alteration and internal quotation marks omitted).

1. The ALJ's Credibility Determination

As part of the RFC finding, the ALJ described the two-step process outlined above and summarized the state-agency opinions, Plaintiff's self-reported symptoms and hearing testimony, and various physicians' treatment records. R. 20-23. The ALJ then stated:

> Based on the evidence outlined above, the undersigned finds that [Plaintiff's] prehearing reports and [her] hearing testimony of suffering totally disabling impairments are not fully credible. . . . . After careful consideration of the evidence, the undersigned finds that since August 1, 2011, [Plaintiff's] medically determinable impairments could reasonably be expected to cause some [of] the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to [the] extent they are inconsistent with [the RFC] set forth above.

8

R. 23.

2. The ALJ's Rationale

Plaintiff objects that the ALJ failed to provide "good reasons" when conducting the second step of the credibility analysis. *See* Pl.'s Br. at 3-8. First, Plaintiff challenges the ALJ's statement that Plaintiff's "[p]hysical examinations have persistently been within normal limits," R. 23, because according to Plaintiff: (i) the symptoms of rheumatoid arthritis "come and go"; and (ii) Plaintiff did have some abnormal physical-examination findings. Pl.'s Br. at 3-5. The ALJ specifically considered, however, multiple items of evidence reflecting Plaintiff's physical problems and abnormal examinations. *See* R. 21, 22, 23; *see also* 20 C.F.R. § 404.1529(c)(3)(v) (prescribing that the ALJ will consider any treatment received by claimant when evaluating the claimant's symptoms); *cf. id.* § 404.1529(c)(4) ("We will consider . . . the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you."). And neither a diagnosis of a medical condition nor an inability to work without some pain establishes disability. *Madrid v. Astrue*, 243 F. App'x 387, 392 (10th Cir. 2007); *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986).

Plaintiff next objects to the ALJ's observation that with the exception of two 2011 foot surgeries, Plaintiff's impairments "have not resulted in [the need for] any surgical treatments, physical therapies, and other rehabilitative therapies." R. 22; *see* Pl.'s Br. at 6. Plaintiff essentially complains that the ALJ failed to recognize the risks associated with surgery and placed too much stock in the lack of any additional surgeries, but she does not

9

contest the factual accuracy of the ALJ's statement. And, again, the treatment actually prescribed for and received by Plaintiff was a proper factor for the ALJ to consider when evaluating Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3)(v).

Finally, Plaintiff asserts that the ALJ overstated her activities of daily living when relying upon Plaintiff's performance of those activities as a basis for discounting Plaintiff's credibility. *See* Pl.'s Br. at 6-8. It is true that a claimant's activities of daily living do not, by themselves, determine the claimant's ability to work, as "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (alteration and internal quotation marks omitted). The ALJ's written decision specifically discussed, however, some of the limitations and conditions Plaintiff herself placed upon her ability to perform her daily activities. *See* R. 20. Further, Plaintiff's own characterization of her activities shows that they were far from "sporadic": Plaintiff reported that despite her pain from flare-ups and a need to take breaks, she was able to: prepare meals four times a week, do dishes and laundry, clean her house, run errands, go on walks, and attend social activities. R. 46-49, 203-10. A claimant's ability to engage in daily activities and a lack of prescribed limitations by physicians may support an adverse credibility assessment. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Wilson*, 602 F.3d at 1146; *Rabon v. Astrue*, 464 F. App'x 732, 735 (10th Cir. 2012).

The decision clearly demonstrates that ALJ considered proper factors in assessing Plaintiff's credibility—e.g., the treatment received and the "location, duration, frequency, and intensity of the individual's pain or other symptoms." SSR 96-7p, 1996 WL 374186,

at *3. Viewed in context, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted).

C. *Evaluation of Plaintiff's Past Relevant Work*

At step four, the ALJ found that Plaintiff's RFC allowed her to perform her past relevant work as a receptionist and stated:

> Within the last 15 years, [Plaintiff] has engaged in substantial gainful activities as a medical assistant and receptionist (Exs. 4D, 2E, 3E, 5E, and 14E). The [VE] testified that [Plaintiff's] . . . past relevant work as a receptionist falls within the definitions of semi-skilled work, sedentary exertion. The vocational expert also testified that an individual possessing the [RFC] listed above would be able to perform the demands and requirements of [Plaintiff's] past relevant work as a receptionist. Based [on] the [VE's] credible testimony, the undersigned is convinced that [Plaintiff] can perform the demands and requirements of her past relevant work as a receptionist.

R. 24; *see also* R. 53-57.

In her final challenge to the ALJ's decision, Plaintiff argues that the ALJ erred in assessing the demands of Plaintiff's past relevant work and in determining that Plaintiff was able to perform that work. *See* Pl.'s Br. at 8-10 (citing *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996)).

In *Winfrey*, the Tenth Circuit stated that a proper step-four analysis includes three phases, each accompanied by specific findings. *See Winfrey*, 92 F.3d at 1023. The court explained:

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands

11

>found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id.* (citations omitted).

Plaintiff first complains that the ALJ failed at phase one to accurately relay Plaintiff's limitations to the VE, because the ALJ failed to include a requirement that Plaintiff "elevate her feet during the workday" and failed to limit Plaintiff to occasional reaching and handling due to problems with her elbows, shoulders, and wrists. Pl.'s Br. at 10. Plaintiff fails to cite any medical-record support for a feet-elevation requirement, however, and Plaintiff's testimony (which did address elevating her feet) was properly found to lack credibility as discussed above. *See id.*; *supra* Part B; R. 20, 23, 43-44, 48, 51-52. In addition, while Plaintiff points to certain items in the record that arguably could support greater restriction on Plaintiff's reaching and handling capabilities, the ALJ's failure to impose such a restriction is supported by substantial evidence in the record that was specifically cited in the written decision. *See* R. 22 (noting that the treating rheumatologist's records show Plaintiff "to present some episodes of mild arthralgias, synovitis, and effusion of her various joints" but do not reflect "significant compromise of strength, flexibility, fine and gross motor functions, . . . and other physiological functions"; noting that Plaintiff denied having chronic pain or significant difficulties with physiological functions), 23 (noting Plaintiff's report that she engages in driving, sewing, crocheting, cross-stitching, and performing chores). The Court may not properly reweigh the evidence that was before the ALJ. *See Bowman*, 511 F.3d at 1272.

Plaintiff also implies that the VE's reliance upon the job of "Reception Clerk" (also listed as "Appointment Clerk"), which requires only occasional fingering, was in error because Plaintiff's previous work took place at a school and would be more accurately classified as "Attendance Clerk," which requires frequent fingering. *See* Pl.'s Br. at 9-10; *Dictionary of Occupational Titles* (4th rev. ed. 1991) ("DOT") 237.367-010 (Reception Clerk), 1991 WL 672185; *id.* 219.362-014 (Attendance Clerk), 1991 WL 671954. But the VE's selection is materially consistent with Plaintiff's own description of her job's requirements. *Compare* R. 198 (Plaintiff stating that as a receptionist, she answered phones, completed attendance reports, assisted students and parents, and handled payments and deposits), *with* DOT 237.367-010, 1991 WL 672185 (stating that a Reception Clerk "[s]chedules appointments" "by mail, phone, or in person," "[m]ay receive callers," and "[m]ay receive payments for services"). Plaintiff has shown no error in the VE's determination.

Finally, Plaintiff argues that the ALJ failed to make a "specific" phase-two finding regarding the physical and mental demands of Plaintiff's past relevant work and that this omission requires reversal. Pl.'s Br. at 8-9. It is true that the ALJ did not specifically list each of the Reception Clerk job demands in the written decision. R. 24. But the ALJ did specifically reference the VE's testimony regarding the requirements of the occupation and opining that a hypothetical claimant with Plaintiff's RFC could perform that occupation as it is generally performed. R. 24; *see* R. 53-55. Considering this reference, the ALJ's discussion is sufficiently specific to support the step-four findings. *See Doyal*, 331 F.3d at 761 ("An ALJ may rely on information supplied by the VE at step four." (internal quotation

marks omitted)); 20 C.F.R. § 404.1560(b)(2) ("A [VE] or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.").

Plaintiff thus has not shown that the ALJ's step-four determination is undermined by a lack of substantial evidence or a failure to apply correct legal standards.

## CONCLUSION

The decision of the Commissioner is AFFIRMED. A separate judgment shall be entered.

IT IS SO ORDERED this 28th day of September, 2018.

*[signature]*
CHARLES B. GOODWIN
United States District Judge